# William Brownson, Administrator, Appellee, v. Nicholas B. Brown, Trading as Nicholas B. Brown & Co., Appellant.

## Gen. No. 17,409.

**1.** APPEALS AND ERRORS—*grounds for reversal.* To justify a reversal of a judgment for a plaintiff in an action of negligence, for refusing to grant a peremptory instruction, or, in the alternative for refusing to grant a motion for a new trial, the court must hold that there was no evidence that the proximate cause of the accident was the negligence of the defendant, or that the weight of the evidence was clearly against the existence of the negligence or against its being the proximate cause of the accident.

**2.** MASTER AND SERVANT—*effect of failure to view part of defective appliance.* Where a boiler temporarily supported by a wooden horse falls on a person working on the permanent support, and the jury with one half of the horse before them and the testimony of a carpentry expert, have sufficient data to find that a defect in the horse was apparent **or** discoverable, they may make such an inference even though they did not have the other half of the horse before them.

**3.** MASTER AND SERVANT—*evidence of strength of support from length of time it supports boiler.* Where a defective wooden horse supported a boiler which fell, that one end of the boiler had rested on the horse for two weeks without splitting it does not prove that the horse was sufficient.

**4.** MASTER AND SERVANT—*when proximate cause is for the jury.* Where a boiler supported by a defective wooden horse fell and defendant claimed that the proximate cause was not the defective horse but a change of the incidence of the weight of the boiler by a change of position of blocks and the horse without defendant's authority, even if there is evidence that there was a change in the weight upon the horse that turned it into a dangerous support, the question of proximate cause is for the jury and verdict for plaintiff will not be disturbed, where there also is evidence that it was defendant's duty to place the boiler in position and leave it correct in level and feasible to work under, that this duty was recognized by both parties, and that the change in the incidence of weight was made with the knowledge and assent of an authorized representative of defendant.

Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed June 30, 1913.

OSCAR A. KROPF and FRED S. ABRAHAM, for appellant.

JOHNSON & MOLTHROP, for appellee; CHARLES P. MOLTHROP, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

A judgment for $2,000 and costs was rendered against the appellant, defendant below, Nicholas B. Brown, by the Superior Court of Cook county February 4, 1911. It was in favor of William Brownson, administrator of the estate of one Frank Griefnow, and was rendered on the verdict of a jury in a suit brought under the "Campbell Act" of Illinois for causing the death of the plaintiff's intestate through negligence. The defendant having appealed to this court, herein assigns several errors, but confines himself in argument to the propositions that there being no sufficient evidence to warrant a verdict against the defendant, the jury should have been peremptorily instructed to find him not guilty, and that in default of such instruction, which should have been given, the court on the return of the verdict for the plaintiff should have granted the motion for a new trial.

It will thus be seen that the question for us is primarily one of fact and that to justify us in reversal on the ground of the first error argued, we must hold that there was no evidence that the proximate cause of the accident was the negligence of the defendant (*Seymour v. Union Stock-Yards & Transit Co.*, 224 Ill. 579), and to justify us in reversal on the alternative error charged, we must hold that the weight of the evidence was clearly against the existence of the negligence or against its being the proximate cause of the accident. We are unable to come to either of these conclusions.

We have carefully read the record presented to us and believe that the question was properly left to the

jury and was one for the jury to decide. Any detailed discussion of the evidence by us would be useless.

It appears to us that there was evidence sufficient to warrant the jury in finding that it was the defendant's duty, due to all who had to work on the permanent supports of the boiler the fall of which crushed and killed the plaintiff's intestate, to use reasonable care to see that it was placed in position on supports sufficient to hold it up, that he violated this duty when setting the boiler by placing the tubular end of it on a frail wooden horse of an inferior material and defective sustaining power, and that this was the primary and proximate cause of the accident. We do not feel by any means sure that it might not properly be held negligence to have used for that purpose the horse in question, with its hemlock top piece and southern pine braces and legs, without reference to its defective condition. Whether or not that was so, we think the jury, with the split horse before it and the testimony of the carpenter expert, had sufficient data to find, if that was necessary for their verdict, that the defect must, before the splitting, have been to some extent apparent, or at least on inspection inferable. It is unfortunate that they could not have had also the other half of the horse before them. Then inference and probability might have given way to certainty on one side or the other. If the defect of an interior cleavage in the top piece, which it is so plain existed in this horse, had, before the horse was used, an outward indication in a crack, the evidence of negligence would be very strong. In the absence of means of acquiring certainty, the jury were at liberty to make fair inferences from inspection of the half that remained.

The jury were, as it is conceded, correctly instructed that they could not find the defendant guilty if they believed from the evidence that a workman of ordinary care and intelligence, acting in the light of his knowledge and attending circumstances at the time of the

alleged negligence, could not reasonably expect or foresee that the blocking up of the boiler in question in the manner in which the same was originally done by the servants and agents of the defendant, as shown by the evidence, would be liable to result in some such injury as that complained of herein; and it therefore inhered in their verdict that they did not so believe, but on the other hand found that there might and should have been an apprehension of calamitous result from the means employed.

We are entirely mindful of the contention of the defendant that the horse had proved that it was of sufficient strength as it was originally placed to bear up the boiler without breaking, and could not, therefore, have been dangerous. We do not agree with it, however. That one end of the boiler had rested on the horse for two weeks without splitting it did not prove the horse was sufficient.

As the Supreme Court of South Dakota said in *Waterhouse v. Schlitz Brewing Co.*, 12 S. D. 397, concerning a building, so we, with appropriate change of the word "days" for "years" might say in this case concerning the horse: "The fact that it had stood for a number of years without falling would afford very slight evidence that it had been properly constructed and of suitable material." The plaintiff may well say in this aspect of the case that the margin of safety should have been greater; that during the two weeks it stood without falling, the strain was gradually developing the defect which existed, the cleavage from the "sap crack" was becoming greater, and the few fibres that held the two halves of the top piece together were parting strand by strand until the end came.

The defendant, however, maintains that the proximate cause of the accident was not the peculiar splitting of the horse from the obvious defect, but the change of the incidence of the weight of the boiler by the

change in the positions of the blocks and the horse without the authority of the defendant.

The question, "What was the proximate cause of this accident" was one for the jury primarily, and it is bound in with their verdict, under the concededly correct instructions given them, that they found it to be the negligence of the defendant. We see no reason to disturb that conclusion on any theory of the case. If it should be assumed that, as defendant contends, and we doubt, the evidence clearly shows such a change on the day before the accident in the weight or strain on the defective horse as turned a safe support into a very dangerous one, nevertheless the jury's verdict ought, in our opinion, to stand. For they had evidence before them, which we do not think clearly overborne, from which it was fairly to be deduced by them that it was the duty of the defendant to place the boiler in position and leave it correct in level and feasible and safe to work about and under; that this was recognized on the one hand by the employer and fellow employes of the plaintiff's intestate and on the other by the defendant and his employes; that the change that was made in the incidence of weight, so far as the horse was concerned, was made by the order, or at least under the direction and guidance, or at the very least with the knowledge and assent of an authorized representative of the defendant about this work, one who, in his own words, "had charge of the steam fitting in the two buildings"—"running in conjunction." We have considered all that is so confidently urged against this view by the defendant's counsel in argument, but the evidence in the record left it open to the jury, without going clearly against its weight, to take this view.

The judgment of the Superior Court is affirmed.

*Affirmed.*